UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

PINCUS ORLANDER, individually       :
and on behalf of his minor
children, et al.,                   :

                     Plaintiffs,    :   12 Civ. 4745 (HBP)

     -against-                      :   OPINION
                                        AND ORDER
JACQUELINE MCKNIGHT, individually   :
and as Borough Commissioner,
et al.,                             :

                     Defendants.    :

----------------------------------X


          PITMAN, United States Magistrate Judge:


I.   Introduction


          Plaintiffs, Pincus Orlander and his wife Chanie

Orlander, commenced this action on their own behalf and on behalf

of their six minor children T.O., H.O., S.O., M.O., Z.O. and D.O.

(the "Infants") on June 18, 2012 for alleged civil rights viola-

tions under 42 U.S.C. § 1983 and various state-law violations.

The suit arises out of an incident that occurred in February 2011

in which the New York City Administration for Children's Services

("ACS"), which employs each of the individual defendants, removed

five of the Infants from the custody of the Orlanders' friends

and family members in the mistaken belief that their parents had engaged in child abuse.  The parties have proposed a settlement, under which they agreed to compromise all claims against all defendants for the total sum of $167,500 to be allocated as follows:  $55,833.33 (one-third) is to be paid to plaintiffs' attorneys; $41,666.67 is to be paid to Pincus and Chanie Orlander as reimbursement for their medical expenses and as compensatory damages; $13,333.33 is to be received by each of T.O., H.O., S.O., M.O., Z.O. and $3,333.33 is to be received by D.O.  Of the sums to be received by the Infants, one half will be deposited in interest bearing accounts to be released to each of the Infants upon their 18th birthday; the remaining half of each Infant's share will be used for the benefit of that Infant during his or her minority.  Specifically, the parents will use the funds on enhancements to the children's lives, such as tuition, summer camp, music lessons, musical instruments and other goods and services that the parents are not legally required to provide as part of their support obligations.

The parties have consented to my exercising plenary jurisdiction over the matter pursuant to 28 U.S.C. §  636(c).

To the extent that the settlement disposes of the claims of the Infants, judicial approval is necessary, and plaintiffs, without objection from defendants, have moved for

2

such approval.  For the reasons set forth below, I find that the
settlement is fair, reasonable and in the best interests of the
Infants.  I, therefore, approve the settlement, with a small
modification to the award of attorney's fees, as set forth below.

II.  Facts

In late January, 2011, nine-month old D.O. was experi-
encing a low grade fever.  His mother, Chanie, took him to a
pediatrician who diagnosed an ear infection and prescribed
antibiotics.  After his parents administered the medication for a
few days, D.O.'s symptoms appeared to have resolved.

On or about February 1, 2011, D.O., crawled under a
table in his home and dislodged one of the legs, causing the
table to collapse and to hit him on the head.  D.O. cried briefly
but stopped after being comforted by his mother.  Given D.O.'s
apparent lack of lasting distress, his mother concluded that the
accident was one of the normal incidents of being a toddler and
that it was not a matter of concern.

The following day, however, D.O. began to vomit.
D.O.'s mother consulted a pediatrician who recommended giving
D.O. soft foods and formula.  D.O.'s condition did not improve,
and the family pediatrician concluded that the ear infection had

not responded to the antibiotic and prescribed a different medication.

On February 3, D.O. was still not eating and appeared to be sleeping excessively.  His mother again contacted D.O.'s pediatrician who told her not to worry.

During the evening of February 3, D.O.'s mother noticed a tremor in D.O.'s leg, and she took him to see the pediatrician on February 4, 2011.  The pediatrician diagnosed D.O. to be suffering from both an ear infection and a stomach virus and advised that the virus could be causing the tremors.

By the following day, the tremors had spread to D.O.'s arm.  After making arrangements for her other minor children to stay with friends and relatives, D.O.'s mother took him to Maimonides Hospital.  The staff at the hospital performed a CT scan of D.O. and determined that he was suffering from a frac- tured skull and an epidural hematoma.  D.O. was admitted to the hospital, and surgery was performed to remove the hematoma.

Because D.O.'s parents did not connect the collapse of the table with D.O.'s injury, they did not have an explanation for the hospital staff as to how he had sustained a fractured skull.  Accordingly, the hospital staff reported the case to the State Central Register of Child Abuse and Maltreatment as a possible case of child abuse.  On February 8, a representative of

4

ACS questioned both parents about the origin of D.O.'s injury, and D.O.'s parents related the story of the table falling on D.O. on February 1.  Despite the fact that additional investigation on February 8 and 9, including a home visit, an interview with D.O.'s pediatrician and interviews of the Orlanders' other five children, disclosed no evidence of abuse and suggested that the Orlanders were loving and conscientious parents, at approximately 10:00 p.m. on February 9, representatives of ACS went to the homes of the friends and family members with whom T.O., H.O., S.O., M.O. and Z.O. were staying and physically took them into ACS custody.  Although D.O. was ready for discharge on the evening of February 9, ACS personnel also advised the staff at Maimonides Hospital that D.O. was in their constructive custody and that he should not be released to his parents.  The ACS staff refused to tell the individuals with whom the Infants were staying where the Infants were being taken and would not even let T.O., who, at twelve years of age, was the oldest of the Infants, keep a cell phone she had been given by her care-givers.  The Infants were taken to an ACS office in Manhattan where each was examined for bruising and evidence of other injuries.  T.O. was also subjected to a pregnancy test, although there does not appear to have been any evidence whatsoever suggesting sexual abuse.  At approximately 3:00 a.m., each of the Infants (other

than D.O. who had never left Maimonides Hospital) were returned
to the families with whom they had been staying.  There is no
evidence that any of the Infants required counseling as a result
of the incident.

III.  <u>Analysis</u>

    A.  Standards Applicable to
        <u>an Infant Compromise</u>

      In determining whether an infant compromise should be
approved, "the Court's role is to 'exercise the most jealous care
that no injustice be done' to the infant."  <u>Southerland v. City
of New York</u>, CV-99-3329 (CPS), 2006 WL 2224432 at *2 (E.D.N.Y.
Aug. 2, 2006), <u>quoting</u> <u>Anderson v. Sam Airlines</u>, 94 Civ. 1935,
1997 WL 1179955 (E.D.N.Y. Apr. 25, 1997).  In this district,
Local Rule 83.2(a)(1) requires that

> [a]n action by or on behalf of an infant or incompetent
> shall not be settled or compromised . . . without leave
> of the Court embodied in an order, judgment or decree.
> The proceeding upon an application to settle or compro-
> mise such an action shall conform, as nearly as may be,
> to the New York State statutes and rules, but the
> Court, for cause shown, may dispense with any New York
> State requirement.

      Consistent with the applicable New York State statutes
and rules, the analysis in this jurisdiction centers on "whether:
(1) the best interests of the infant are protected by the terms

and conditions of the proposed settlement; and (2) the proposed settlement, including any legal fees and expenses to be paid, as part of the proposal, are fair and reasonable." Martegani v. Cirrus Design Corp., 687 F. Supp. 2d 373, 377 (S.D.N.Y. 2010) (Fox, M.J.), citing Local Civ. R. 83.2(a); N.Y. Jud. L. § 474; N.Y. C.P.L.R. §§ 1205-08; see also Edionwe v. Hussain, 7 A.D.3d 751, 753, 777 N.Y.S.2d 520, 522 (2d Dep't 2004) (required analysis is whether settlement is "fair and reasonable and in the infant plaintiff's best interests").  "There is no bright-line test for concluding that a particular settlement is fair." Sch. for Language & Commc'n Dev. v. New York State Dep't of Educ., 02-CV-0269 (JS)(JO), 2010 WL 1740416 at *2 (E.D.N.Y. Apr. 7, 2010) (Report & Recommendation), adopted at 2010 WL 1752183 (E.D.N.Y. Apr. 28, 2010), citing Newman v. Stein, 464 F.2d 689, 692-93 (2d Cir. 1972).  Moreover, the Court of Appeals for the Second Circuit has noted that "Rule 83.2 is hardly a rigid obligation imposed on district courts." Neilson v. Colgate-Palmolive Co., 199 F.3d 642, 655 (2d Cir. 1999).  Stated another way, "[d]istrict courts have broad discretion when conducting an infant compromise hearing." Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 89 (2d Cir. 2010).

Despite this broad discretion, a court cannot approve a proposed infant compromise unless it is "fair, reasonable, and adequate," based on a comparison of "the terms of the compromise with the likely rewards of litigation." Neilson v. Colgate-Palmolive Co., supra, 199 F.3d at 654, quoting Maywalt v. Parker & Parsley Petro. Co., 67 F.3d 1072, 1079 (2d Cir. 1995) (internal quotation marks omitted).  In making this determina-tion, the court should "'form an educated estimate of the com-plexity, expense, and likely duration of such litigation . . . and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.'"  Martegani v. Cirrus Design Corp., supra, 687 F. Supp. 2d at 377 (alteration in original), quoting Newman v. Stein, supra, 464 F.2d at 692. These other factors include

> (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; . . . (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Allstate Ins. Co. v. Williams, 04 CV 4575 (CLP), 2006 WL 2711538 at *2 (E.D.N.Y. Sept. 21, 2006) (alterations in original), quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974).  In evaluating the fairness of a proposed settlement,

a court is not required to "decide the merits of the case or resolve unsettled legal questions." Carson v. Am. Brands, Inc., 450 U.S. 79, 88 n.14 (1981); Sch. for Language & Commc'n Dev. v. New York State Dep't of Educ., supra, 2010 WL 1740416 at *3; In re McDonnell Douglas Equip. Leasing Sec. Litig., 838 F. Supp. 729, 739 (S.D.N.Y. 1993) (Cannella, D.J.).

A settlement is presumptively fair and reasonable if "'(i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; [and] (iii) there has been sufficient discovery to enable counsel to act intelligently . . . .'" Baez v. City of New York, 09-CV-2635 (RRM)(JO), 2010 WL 1992537 at *2 (E.D.N.Y. Apr. 21, 2010) (Report & Recommendation) (alterations in original), adopted at 2010 WL 1991521 (E.D.N.Y. May 17, 2010), quoting Ross v. A.H. Robins Co., 700 F. Supp. 682, 683 (S.D.N.Y. 1988) (Motley, D.J.). Additionally, a settlement negotiated by the natural guardian of an infant is presumptively fair and in the best interests of the child. Sch. for Language & Commc'n Dev. v. New York State Dep't of Educ., supra, 2010 WL 1740416 at *3, citing Sabater v. Lead Indus. Ass'n, 00-CV-8026 (LMM), 2001 WL 1111505 at *3-4 (S.D.N.Y. Sept. 21, 2001) (McKenna, D.J.) and Stahl v. Rhee, 220 A.D.2d 39, 46, 643 N.Y.S.2d 148, 153 (2d Dep't 1996).

Taking these standards and presumptions into consideration, I conclude that the infant compromise is fair, reasonable and in the best interests of the infant plaintiffs.

First, there is no evidence of collusion in this case. Rather, having presided over a settlement conference with the parties and having reviewed the plaintiffs' submissions, I am confident that the parties agreed to this compromise only after dealing extensively and exclusively at arm's length with each other.  Furthermore, pursuant to N.Y. C.P.L.R. § 1208(b)(2), plaintiff's counsel asserts in her amended declaration that neither she nor her firm has represented anyone besides the plaintiffs in any claims arising from the same occurrences (Declaration of Carolyn A. Kubitschek, Esq., dated June 26, 2013 (Docket Item 19) ("Kubitschek Decl."), ¶ 11).  Additionally, plaintiffs' counsel represents that neither she nor her firm received or will receive any compensation from any party adverse to the interests of the infant plaintiffs, nor have they become involved in the settlement at the behest of any opposing or adverse party (Kubitschek Decl. ¶ 10).

Second, plaintiffs' counsel is experienced in cases such as this.  See, e.g., Denes Q. v. Caesar, 07-CV-1281 (CBA)(JO), 2009 WL 2877155 (E.D.N.Y. Sept. 8, 2009) (adopting Report & Recommendation).

10

Third, I am satisfied that sufficient discovery has occurred to warrant an educated analysis of the proposed compromise and the issues involved.  The parties were engaged in discovery for more than seven months before agreeing to settle the case.  On May 1, 2013, I presided over a settlement conference during which the parties reached a settlement, and I am satisfied on the basis of that conference that the parties had a sufficient understanding of the facts to enable an intelligent evaluation of the risks and benefits of further litigation.

Furthermore, I have found no evidence to rebut the presumption that the settlement that Mr. and Mrs. Orlander agreed to was fair and in the best interests of the Infants.

Under the proposed settlement, each of the Infants other than D.O. will receive $6,666.66, plus accrued interest, on his or her 18th birthday.  In the meantime, the funds would be held in an interest bearing account at J.P. Morgan Chase Bank.

Finally, plaintiffs' counsel has adequately explained why the settlement amount is fair and reasonable.  Although I need not "decide the merits of the case or resolve unsettled legal questions," Carson v. American Brands, Inc., supra, 450 U.S. at 88 n.14, I must still analyze the settlement figure under the appropriate standards and factors.

I have evaluated the original claim, the record and the proposed agreement and have concluded that a settlement amount of $13,333.33 for each of the Infants other than D.O. is wholly reasonable under the circumstances.  First, the terms of the compromise compare favorably to the likely rewards of litigation.  Although plaintiffs have a relatively strong case on liability, the outcome of litigation can rarely be predicted with certainty.  In Section 1983 cases, plaintiffs must establish "deliberate indifference," which is essentially equivalent to the reckless disregard of a risk.  Farmer v. Brennan, 511 U.S. 825, 836 (1994).  Thus, to establish a Section 1983 claim, it is not enough to prove that a party is merely negligent in removing a child from her parents or the care-givers chosen by the parents.

In addition, plaintiffs' damages case appears to be substantially more difficult than their liability case.  Although being taken out of bed to be examined by strangers in the middle of the night is, no doubt, traumatic, ACS's custody of the Infants was of short duration (five hours) and there is no evidence that any of the Infants suffered psychological trauma that was sufficiently severe to warrant the intervention of a mental health professional.

In addition, a trial would have its own potential for trauma on the Infants.  Testifying at a trial and facing the

rigors of cross-examination is a difficult and often unpleasant experience for many witnesses.  Although a skilled practitioner, such as defense counsel, would, no doubt temper the intensity of his cross-examination given the Infants' tender ages, the experience is still one that most youngsters are better off avoiding.

Finally, I conclude that the settlement is fair and reasonable notwithstanding the fact that the amount received by D.O. is much smaller than the amounts received by his older siblings.  As noted above, D.O. was nine-months old at the time of the events in issue.  He was hospitalized at the time, recuperating from surgery, and was never removed from the hospital. His extremely young age, the virtual certainty that he will have no conscious memory of the events giving rise to the action and the fact that ACS never took physical custody of D.O. are all factors suggesting that his settlement amount should be smaller than the amounts received by his siblings.

Based on this evaluation of the circumstances of the case, I am satisfied that the settlement is fair, reasonable, and in the best interests of the Infants.

B.   Standards for Assessing
     the Reasonableness of
     Attorney's Fees and Costs

"When approving an infant's compromise, the court [also] has an obligation to approve the reasonableness of attorney's fees." Sanchez v. MTV Networks, 10 Civ. 7854 (TPG), 2012 WL 2094047 at *2 (S.D.N.Y. June 11, 2012) (Griesa, D.J.).  The inquiry should center on whether there was "'suitable compensation for the attorney for his service . . . [on] behalf of the . . . infant.'" Baez v. City of New York, supra, 2010 WL 1992537 at *3 (alterations in original), quoting Allstate Ins. Co. v. Williams, supra, 2006 WL 2711538 at *4.  An infant plaintiff's guardian's agreement to a proposed attorney fee is not determinative because "in the last analysis the amount of the fee must be fixed by the court and any agreement of the guardian is advisory only." Werner v. Levine, 52 Misc. 2d 653, 654-55, 276 N.Y.S.2d 269, 271 (Sup. Ct. Nassau Co. 1967); see also Baez v. City of New York, supra, 2010 WL 1992537 at *3 (agreements on fees "serve only to guide the court in making a determination committed to its sound discretion"), citing Allstate Ins. Co. v. Williams, supra, 2006 WL 2711538 at *4); accord D.J. v. City of New York, 11 Civ. 5458 (JGK)(DF), 2012 WL 5431034 at *3 (S.D.N.Y. Oct. 16, 2012) (Freeman, M.J.) (Report & Recommendation), adopted at 2012

14

WL 5429521 (S.D.N.Y. Nov. 7, 2012); Orlandi v. Navistar Leasing Co., 09 Civ. 4855 (THK), 2011 WL 3874870 at *4 (S.D.N.Y. Sept. 2, 2011) (Katz, M.J.); Stephen v. Target Corp., CV-08-338 (CPS)(JG), 2009 WL 367623 at *3 (E.D.N.Y. Feb. 12, 2009) (adopting Report & Recommendation).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 186 (2d Cir. 2008), quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

The hourly rates used in making a fee award should be "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, supra, 522 F.3d at 184. This rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984); accord Reiter v. MTA N.Y. City Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006). In determining a reasonable hourly rate, the court should not only consider the rates approved in other cases in the District, but should also consider any evidence offered by the parties. Farbotko v. Clinton Cnty., 433 F.3d 204, 208-09 (2d

Cir. 2005).  The Court is also free to rely on its own familiarity with prevailing rates in the District.  <u>A.R. ex rel. R.V. v. N.Y. City Dep't of Educ.</u>, 407 F.3d 65, 82 (2d Cir. 2005); <u>Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund</u>, 831 F.2d 407, 409 (2d Cir. 1987).

Finally, the Second Circuit has identified the following factors that a court should consider in determining what a reasonable client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted <u>pro</u> <u>bono</u> (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

<u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, <u>supra</u>, 522 F.3d at 184 (footnote omitted).

In all cases, "the fee applicant has the burden of showing by 'satisfactory evidence -- in addition to the attorney's own affidavits' -- that the requested hourly rates are the prevailing market rates." <u>Farbotko v. Clinton Cnty.</u>, <u>supra</u>, 433

16

F.3d at 209, quoting Blum v. Stevenson, supra, 465 U.S. at 896 n.11.

      An attorney seeking fees must maintain and submit time records "from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept the court should not award the full amount requested." Martegani v. Cirrus Design Corp., supra, 687 F. Supp. 2d at 378, quoting Monaghan v. SZS 33 Assocs., L.P., 154 F.R.D. 78, 83-84 (S.D.N.Y. 1994) (Sweet, D.J.) (internal quotation marks omitted). Similarly, "[w]here an attorney fails to provide suitable docu-mentation to substantiate the costs incurred, a court may decline to award any costs." Mateo v. United States, 06 Civ. 2647 (KNF), 2008 WL 3166974 at *5 (S.D.N.Y. Aug. 6, 2008) (Fox, M.J.), citing Lide v. Abbott House, 05 Civ. 3790 (SAS), 2008 WL 495304 at *2 (S.D.N.Y. Feb. 25, 2008) (Scheindlin, D.J.).

      Mr. & Mrs. Orlander executed a retainer agreement on April 16, 2012 setting forth the terms under which counsel would represent them and their children (Kubitschek Decl. Ex. 2).  With respect to fees, the retainer agreement provides, in pertinent part:

         If the case results in the recovery of a single sum of money, without a separate award of attorneys' fees, the attorneys' fees will be the greater of a)

> one-third of the recovery, or b) the attorneys' fees computed at their regular hourly rates, using those rates current at the time the payment is made.  The attorneys' current hourly rates are as follows:  David J. Lansner and Carolyn A. Kubitschek: $500.00; Other attorneys:  $175.00-400.00; Law graduates:  $125.00; Law students:  $100.00.  Paralegals:  $100.00; Messengers:  $25.00.  If the attorneys raise their rates, the hourly fee for the case will be raised equally.  The clients understand and agree that the attorneys will not be required to reduce their fees in order to satisfy any lien that the clients may have.

(Kubitsheck Decl. Ex. 2 at 4).  Because the retainer agreement relates to counsel's representation of all the plaintiffs and that portion of the fee allocable to the representation of the parents does not require judicial approval, the issue before me is what portion of $105,000.00[1] counsel should receive as a fee. There can be no debate that counsel are entitled to at least $20,833.33, i.e., one third of the portion of the settlement allocable to Mr. and Mrs. Orlander.

The material submitted by plaintiffs' counsel makes it difficult to assess the reasonableness of a fee award of one-third of the Infants' recovery.  Although counsel has submitted

---

[1]The total settlement amount is $167,500.00.  $41,666.67 of this amount is allocable to Mr. and Mrs. Orlander.  In light of the one-third contingency fee agreement, in order for Mr. and Mrs. Orlander to recover $41,666.67, their gross recovery would have to be 1.5 times the amount of their actual recovery; 1.5 times $41,666.67 is $62.500.00.  Accordingly, the issue that remains is what portion of the remaining $105,000.00 of the settlement figure should be allocated to attorney's fees.

what appear to be contemporaneous time records (Kubitschek Decl. Ex. 3), the time records bill the time of attorneys Lansner and Kubitschek at $625.00 per hour rather than the $500.00 hourly fee set in the retainer agreement.  This difference cannot be attributed to an increase in the hourly rate instituted after the retainer was executed.  The time records use the $625.00 hourly fee for work done before the execution of the retainer agreement and in the same month that the retainer was executed.  Counsel has not provided any explanation for the disparity between the hourly rate set in the retainer agreement and the hourly rate used in the time records.

Second, counsel provides no information about the experience and credentials of the attorneys who worked on the case.[2]

---

[2]I appreciate that plaintiffs' counsel has frequently represented infants in both this District and the Eastern District of New York, and that if I searched the dockets in other cases and performed a Westlaw or Lexis search, I could probably locate a statement of counsel's credentials.  Nonetheless, the information to be submitted in support of a fee application is well settled and should be known to counsel.  It is, therefore, incumbent on counsel to submit the required information and inappropriate to expect a judge "to play archaeologist" with the record in this or other cases in an effort to tease out information that counsel could have easily submitted.  Ascione v. Pfizer, Inc., 312 F. Supp. 2d 572, 579 (S.D.N.Y. 2004) (Marrero, D.J.)

Third, the descriptions of some of the services pro-
vided do not make sense.  For example, there are several entries
in which counsel seeks compensation for preparation for deposi-
tions although no depositions were conducted in this matter.

However, I also note that the amount sought under the
contingency fee provision of the retainer agreement -- one-third
-- has been described as a "'usual and customary'" contingency
fee, S.W. v. City of New York, 09-CV-1777 (ENV)(MDG), 2012 WL
6625879 at *2 (E.D.N.Y. Dec. 19, 2012) (collecting cases), and
that contingency fee arrangements providing for attorney's fees
of one-third have been routinely approved.  Orlandi v. Navistar
Leasing Co., supra, 2011 WL 3874870 at *5 (approving one-third
contingency fee in action on behalf of infant); Tsotesi v. Bd. of
Educ., 02 Civ. 7809 (LAK), 2003 WL 22006936 at *2 (S.D.N.Y. Aug.
25, 2003) (Kaplan, D.J.) (capping fee in action on behalf of
infant at one-third); cf. Griffiths ex rel. Griffiths v.
Jugalkishore, 09 Civ. 2657 (LTS)(KNF), 2010 WL 4359230 at *7
(S.D.N.Y. Oct. 14, 2010) (reducing one-third contingency fee in
action on behalf of infant where attorney failed to submit time
records) (Report & Recommendation) (Fox, M.J.), adopted at 2010
WL 4365552 (S.D.N.Y. Nov. 3, 2010); Savarese v. Cirrus Design
Corp., 09 Civ. 1922 (JGK)(KNF), 2010 WL 532289 at *6 (S.D.N.Y.

Feb. 8, 2010) (Report & Recommendation) (Fox, M.J.) (same), adopted at 2010 WL 815027 (S.D.N.Y. Mar. 9, 2010).

Although the overall number of hours for which compensation is sought -- 107 -- seems generally appropriate given the work required and the stage at which the matter settled, I believe some slight downward adjustment is appropriate given the lacunae in the record cited above.  I find that the attorney's fee to be awarded with respect to the amount of the settlement remaining after deduction of (1) the portion of the settlement allocable to Mr. and Mrs. Orlander and (2) the attorney's fee attributable to Mr. and Mrs. Orlander's share, should be reduced to thirty percent instead of one-third and that the difference be divided among the Infants on a pro rata basis.  This adjustment yields the following awards:

| | |
|---|---|
| Total Settlement Amount | $167,500.00 |
| Amount Allocable to Mr. & Mrs. Orlander | ($41,666.67) |
| Attorney's Fee Allocable to Mr. & Mrs. Orlander's Share | ($20,833.33) |
| Balance of Settlement Proceeds | $105,000.00 |
| 30% Fee on Portion of Award Allocable to Infants | ($31,500.00) |
| Balance of Settlement Proceeds | $73,500.00 |
| Award to Each of T.O., H.O., S.O., M.O. and Z.O. | ($14,000.00) |

21

Award to D.O.                                            ($3,500.00)


IV.  Conclusion


        Accordingly, for all the reasons set forth above, the

parties' settlement is approved, as modified herein.  The settle-

ment fund is to be divided as follows:

Attorneys Fee:                                          $52,333.33

Amount to be Received
by Mr. and Mrs Orlander                                 $41,666.67

Amount to be Received
by Each of T.O., H.O.,
S.O., M.O. and Z.O.                                     $14,000.00

Amount to be Received
by D.O.                                                 $3,500.00

One-half of the amount received by each of the infant plaintiffs

is to be deposited in a guaranteed interest bearing account or

guaranteed certificate of deposit at J.P. Morgan Chase Bank and

is to be released to each of the infant plaintiffs when he or she

reaches the age of 18.  The remainder of the amount received by

each of the infant plaintiffs is to be spent on enhancements to

that infant plaintiff's life, including, but not limited to,

summer camp, music lessons, musical instruments and other goods

and services that the parents are not legally required to provide
as part of their support obligations.

Dated:   New York, New York
         August 15, 2013

                              SO ORDERED

                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

Carolyn A. Kubitschek, Esq.
Lansner & Kubitschek
Suite 203
325 Broadway
New York, New York  10007

D. Alan Rosinus, Esq.
Assistant Corporation Counsel
City of New York
100 Church Street
New York, New York  10007

23